**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **BRIAN BROWN** ) | |
| **NICHOLAS SCIARRINO** ) | |
| **JORDAN ASHBY** ) | |
| **KEVIN KEENAN** ) | |
| **CARLOS DIAZ** ) | Case No: _____ |
| **IRAN MALAVE** ) | (JURY TRIAL DEMANDED) |
| **VICTOR COLON** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | |
| ) | |
| **NEW YORK CITY HOUSING** ) | |
| **AUTHORITY** ) | |
| ) | |
| **Defendant.** ) | |

## COMPLAINT

### INTRODUCTION

Plaintiffs, by and through their counsel, the law firms of Woodley & McGillivary LLP and Spivak Lipton LLP for their complaint against the New York City Housing Authority ("NYCHA"), hereby state as follows:

### PARTIES

1. Plaintiffs identified in the caption of this Complaint have given their written consent to be party plaintiffs in this action pursuant to 29 U.S.C. § 216(b). Such written consents are appended to this Complaint in the attached Appendix. These written consent forms set forth each plaintiff's name and address. The representative plaintiffs are Brian Brown, Nicholas Sciarrino, Jordan Ashby, Kevin Keenan, Carlos Diaz, Iran Malave and Victor Colon. They bring this action as a collective action in accordance with 29 U.S.C. § 216(b) of the Fair Labor Standards Act (FLSA) against the defendant on behalf of themselves and all others similarly situated because of defendants' unlawful deprivation of plaintiffs' rights to overtime compensation under the FLSA.

**JURISDICTION AND VENUE**

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391.

**FACTS**

4. Plaintiffs are, and at all times material herein have been, employed by the New York City Housing Authority ("NYCHA") in the position of Maintenance Worker or Heating Plant Technician ("HPT").

5. At all material times herein, representative plaintiff Brian Brown has worked as a Maintenance Worker at a NYCHA housing development, Jackson Houses located at 3145 Park Ave, Bronx, NY 10451. At all times material herein, representative plaintiff Nicholas Sciarino has worked as a Maintenance Worker at a NYCHA housing development, Marlboro Houses, located at 2740 86th St., Brooklyn, NY 11223. At all material times herein, representative plaintiff Jordan Ashby has worked as a Maintenance Worker at a NYCHA housing development, Beach 41st Houses, located at 38-20 Beach Channel Dr., Queens, NY 11691. At all material times herein, representative plaintiff Kevin Keenan has worked as a Maintenance Worker at a NYCHA housing development, Wise Towers, located at 124 W 91st St., New York, NY 10024. At all material times herein, representative plaintiff, Carlos Diaz, has worked as a Maintenance Worker at a NYCHA housing development, Fort Washington Avenue Rehab, located at 99 Fort Washington Ave., New York, NY 10032. Until October 28, 2016, representative plaintiff Iran Malave worked as a Maintenance Worker at a NYCHA housing development, Gowanus Houses, located at 211 Hoyt St, Brooklyn, NY 11217. At all material times herein, representative plaintiff

Victor Colon, has worked as a Heating Plant Technician at a NYCHA housing development, Soundview Houses located at 1720 Seward Ave., Bronx, NY 10473.

6. Plaintiffs bring this action for a declaratory judgment, back pay and other relief pursuant to 29 U.S.C. § 207, 29 U.S.C. § 216(b), and 28 U.S.C. § 1331 to remedy the defendant's willful and unlawful violations of federal law complained of herein.

7. Each of the plaintiffs in this action while employed by defendant has been an "employee" within the meaning of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 203(e)(1).

8. Defendant New York City Housing Authority is, among other things, a juridical entity amenable to suit under the FLSA in that it is, and was at all times material hereto, a public agency within the meaning of Section 3(x) of the FLSA, 29 U.S.C. § 203(x). NYCHA is a public benefit corporation organized under the New York public housing laws and is a legally separate entity from the City of New York. N.Y. Pub. Hous. Law §§ 30, 401. The New York City Housing Authority has a principal office and place of business located at 250 Broadway, New York, NY 10007, and may be served with process by serving the General Counsel at the New York City Housing Authority Law Department, 250 Broadway, 9th Floor, New York, NY 10007.

9. Within the last three years and continuing to date, while employed by defendant as Maintenance Workers, plaintiffs Brown, Sciarrino, Ashby, Keenan, Diaz and other similarly situated maintenance workers assist in routine maintenance, operation and repair of public buildings and structures, and the equipment they contain. Plaintiffs' job duties may include but are not limited to some of the following: conducting visual inspections of building equipment and conditions; checking for defects, malfunctions and hazardous conditions; driving to and from work sites; maintaining, adjusting and making minor repairs of building hardware, furniture, shelving and equipment; replacing broken window and door glass; making minor repairs to

3

masonry, woodwork, flooring and walls; making minor repairs to building electrical, plumbing and heating systems; ordering replacement parts; and assisting in relocating building equipment.

10. Within the last three years and continuing to date, while employed by defendant as an HPT, plaintiff Colon and other similarly situated HPTs ensure that public housing facilities are properly heated and supplied with hot water, maintain and repair heating and domestic hot-water boilers in public housing projects, respond to heating complaints submitted to district and borough offices, as well as mayoral office, and perform related work while under supervision. Plaintiffs' job duties include but are not limited to some of the following: standing watch and firing low pressure boilers; maintaining adjusting and making minor repairs to boilers, industrial heating and domestic hot water equipment and all auxiliaries; updating the assistant supervisor regarding heating complaints; and keeping logs and making reports as required.

11. While working as Maintenance Workers or HPTs, the representative plaintiffs routinely work over 40 hours a week and do not receive overtime compensation at the rate of one and one-half times their regular rate of pay for all hours worked over 40 in a week. From July 1 until the Monday after Labor Day (hereinafter referred to as "the summer months"), Maintenance Workers and HPTs are scheduled to work 40 hours a week, as their regular schedule, with one hour automatically deducted each day for meal periods. In all other months, Maintenance Workers and HPTs are regularly scheduled to work 42.5 hours per week, with one half hour automatically deducted each day for meal periods. In addition, and as described in further detail below, they frequently work overtime.

12. During the weeks that the plaintiffs performed more than 40 hours performing the work described in paragraphs 9, 10 and 11 above, the defendant has violated the FLSA in the following ways: (1) failing to pay plaintiffs for all hours worked by failing to compensate

plaintiffs for work performed before the official start time of their shifts or after the official end time of their shifts, and by automatically deducting an hour or half hour for meal periods although work was performed; and/or (2) failing to pay plaintiffs for overtime work performed over the 40 hour threshold until more than two pay periods after the work was performed.

13. At all times material herein, all persons who work for NYCHA as Maintenance Workers or HPTs are similarly situated because they perform job duties similar to those described in paragraphs 9 and 10 above, work hours similar to those described in paragraph 11 above, and because they are subject to the defendant's pay practices described in paragraph 12 above.

*Failure to Compensate Plaintiffs for All Hours Worked*

14. Defendant fails to compensate plaintiffs for work hours that are performed before and after their shifts, and for work hours performed during plaintiffs' unpaid meal periods.

15. For example, representative plaintiff Brian Brown, is a Maintenance Worker assigned to Jackson Houses and works over 40 hours per week (excluding his unpaid meal periods) at least 1 week out of every 4 weeks in the summer months and 3 to 4 weeks out of every 4 weeks in all other months. When plaintiff Brown works over 40 hours in a workweek performing the job duties described in paragraph 9, defendant fails to compensate plaintiff for work performed before the official shift start time and/or after the official shift end time, even when the work performed is recorded by defendant's timekeeping system. NYCHA also fails to compensate plaintiff for work performed during his unpaid meal periods. During the summer months, plaintiff Brown is regularly scheduled to work from 8:00 AM to 4:00 PM, Monday through Friday. In all other months, he is regularly scheduled to work from 8:00 AM until 4:30 PM,

Monday through Friday. Every fifth week, plaintiff Brown works his regular schedule on Saturday and Sunday as well.

16. Approximately 4 to 5 times per week plaintiff Brown arrives approximately 10 to 20 minutes or longer before the start of his shift and begins working. During this time, plaintiff Brown is changing into his uniform because NYCHA's work rules prohibit workers from wearing their uniforms off-site. He is also preparing for roll call, charging his handheld device, receiving his first assignments for the day and gathering his equipment and supplies. Approximately 1 to 2 times per week, plaintiff Brown continues working for approximately 30 to 60 minutes after the end of his shift. During this time, he is performing the job duties described in paragraph 9, and also changing out of his uniform and returning his equipment and supplies. NYCHA work rules require workers to stay in uniform until 4:30 PM (or 4:00 PM during the summer months.) When plaintiff Brown must work past the end of his shift, it is because he has received an assignment near the end of his shift that must be completed that day. Further, it is defendant's policy that Maintenance Workers cannot remain on site alone. As a result, when another Maintenance Worker must work past the end of his shift to complete an assignment, plaintiff Brown must work past the end of his shift to assist. Likewise, when plaintiff Brown must work past the end of his shift to complete an assignment, another Maintenance Worker must stay past the end of his shift to help. The large volume of work also causes plaintiff Brown to work through all or a portion of his meal period approximately 3 times per week, even though the entire period is unpaid. When plaintiff Brown performs these unpaid work activities, it causes him to work in excess of 40 hours per week, for which he is not properly compensated.

17. Representative plaintiff Nicholas Sciarrino, is a Maintenance Worker assigned to Marlboro Houses and works over 40 hours per week (excluding his unpaid meal periods) at least

1 week out of every 4 weeks in the summer months and approximately 3 weeks out of every 4 weeks in all other months. When plaintiff Sciarrino works over 40 hours in a workweek performing the job duties described in paragraph 9, defendant fails to compensate plaintiff for work performed before his official shift start time and/or after the official shift end time, even when the work performed is recorded on defendant's timekeeping system. NYCHA also fails to compensate plaintiff for work performed during his unpaid meal periods. During the summer months, plaintiff Sciarrino is regularly scheduled to work from 8:00 AM to 4:00 PM, Monday through Friday. In all other months, he is regularly scheduled to work from 8:00 AM until 4:30 PM, Monday through Friday. Every seventh week, plaintiff Sciarrino works his regular schedule on Saturday and Sunday as well.

      18. Approximately 4 to 5 times per week, plaintiff Sciarrino arrives approximately 10 to 20 minutes or longer before the start of his shift and begins working. During this time, plaintiff Sciarrino changes into his uniform because NYCHA's work rules prohibit workers from wearing their uniforms off-site. He is also preparing for roll call, charging his handheld device, receiving his first assignments for the day and gathering his equipment and supplies. Approximately 2 to 3 times per month, plaintiff Sciarrino continues working for approximately 10 to 15 minutes after the end of his shift. During this time, he is performing the job duties described in paragraph 9, and also changing out of his uniform and returning his equipment and supplies. NYCHA work rules require workers to stay in uniform until 4:30 PM (or 4:00 PM during the summer months.) When plaintiff Sciarrino must work past the end of his shift, it is because he has received an assignment near the end of his shift that must be completed that day. Further, it is defendant's policy that Maintenance Workers cannot remain on site alone. So, when another Maintenance Worker must work past the end of his shift to complete an assignment, plaintiff Sciarrino must

work past the end of his shift to assist. Likewise, when plaintiff Sciarrino must work past the end of his shift to complete an assignment, another Maintenance Worker must stay past the end of his shift to help. The large volume of work also causes plaintiff Sciarrino to work through all or a portion of his meal period approximately 2 times per week, even though the entire period is unpaid. When plaintiff Sciarrino performs these unpaid work activities, it causes him to work in excess of 40 hours per week, for which he is not properly compensated.

19. Representative plaintiff Jordan Ashby, is a Maintenance Worker assigned to Beach 41st Houses and works over 40 hours per week (excluding his unpaid meal periods) at least 1 week out of every 4 weeks in the summer months and approximately 3 weeks out of every 4 weeks in all other months. When plaintiff Ashby works over 40 hours in a workweek performing the job duties described in paragraph 9, defendant fails to compensate plaintiff for work performed before his official shift start time and/or after the official shift end time, even when the work performed is recorded on defendant's timekeeping system. NYCHA also fails to compensate plaintiff for work performed during his unpaid meal periods. During the summer months, plaintiff Ashby is regularly scheduled to work from 8:00 AM to 4:00 PM, Monday through Friday. In all other months, he is regularly scheduled to work from 8:00 AM until 4:30 PM, Monday through Friday. Plaintiff Ashby also works his regular schedule on Saturday, 3 weeks per month.

20. Approximately 4 to 5 times per week, plaintiff Ashby arrives approximately 10 to 20 minutes or longer before the official start time of his shift and begins working. During this time, plaintiff Ashby changes into his uniform because NYCHA's work rules prohibit workers from wearing their uniforms off-site. He also prepares for roll call, charges his handheld device, receives his first assignments for the day and gathers his equipment and supplies. Approximately

3 to 4 times per week, plaintiff Ashby continues working for approximately 10 to 20 minutes after the end of his shift. During this time, he is performing the job duties described in paragraph 9, and also changing out of his uniform and returning his equipment and supplies. NYCHA work rules require workers to stay in uniform until 4:30 PM (or 4:00 PM during the summer months.) When plaintiff Ashby must work past the end of his shift, it is because he has received an assignment near the end of his shift that must be completed that day. Further, it is defendant's policy that Maintenance Workers cannot remain on site alone. As a result, when another Maintenance Worker must work past the end of his shift to complete an assignment, plaintiff Ashby must work past the end of his shift to assist. Likewise, when plaintiff Ashby must work past the end of his shift to complete an assignment, another Maintenance Worker must stay past the end of his shift to help. The large volume of work also causes plaintiff Ashby to work through all or a portion of his meal period approximately 3 to 4 times per week, even though the entire period is unpaid. When plaintiff Ashby performs these unpaid work activities, it causes him to work in excess of 40 hours per week, for which he is not properly compensated.

21. Representative plaintiff Kevin Keenan, is a Maintenance Worker assigned to Wise Towers and works over 40 hours per week (excluding his unpaid meal periods) at least 1 week out of every 4 weeks in the summer months and approximately 3 weeks out of every 4 weeks in all other months. When plaintiff Keenan works over 40 hours in a workweek performing the job duties described in paragraph 9, defendant fails to compensate plaintiff for work performed before his shift start time and/or after the end of his shift end time, even when the work performed is recorded by defendant's timekeeping system. NYCHA also fails to compensate plaintiff for work performed during his unpaid meal periods. During the summer months, plaintiff Keenan is regularly scheduled to work from 8:00 AM to 4:00 PM, Monday through

9

Friday. In all other months, he is regularly scheduled to work from 8:00 AM until 4:30 PM, Monday through Friday. Every seventh or eighth week, plaintiff Keenan works his regular schedule on Saturday and Sunday as well.

22. Approximately 4 to 5 times per week plaintiff Keenan arrives approximately 10 to 20 minutes or longer before the start of his shift and begins working. During this time, plaintiff Keenan changes into his uniform because NYCHA's work rules prohibit workers from wearing their uniforms off-site. He is also prepares for roll call, charges his handheld device, receives his first assignments for the day and gathers his equipment and supplies. Approximately 2 to 3 times per week, plaintiff Keenan continues working for approximately 30 to 60 minutes after the end of his shift. During this time, he is performing the job duties described in paragraph 9, and also changing out of his uniform and returning his equipment and supplies. NYCHA work rules require workers to stay in uniform until 4:30 PM (or 4:00 PM during the summer months.) When plaintiff Keenan must work past the end of his shift, it is because he has received an assignment near the end of his shift that must be completed that day. Further, it is defendant's policy that Maintenance Workers cannot remain on site alone. As a result, when another Maintenance Worker must work past the end of his shift to complete an assignment, plaintiff Keenan must work past the end of his shift to assist. Likewise, when plaintiff Keenan must work past the end of his shift to complete an assignment, another Maintenance Worker must stay past the end of his shift to help. Approximately 2 to 3 times per month, there is an urgent facilities matter or emergency that causes plaintiff Keenan to work through all or a portion of or his entire meal period, even though the meal period is unpaid. When plaintiff Keenan performs these unpaid work activities, it causes him to work in excess of 40 hours per week, for which he is not properly compensated.

23. Representative plaintiff Carlos Diaz, is a Maintenance Worker assigned to Fort Washington Avenue Rehab and works over 40 hours per week (excluding his unpaid meal periods) at least 1 week out of every 4 weeks in the summer months and 3 to 4 weeks out of every 4 weeks in all other months. When plaintiff Diaz works over 40 hours in a workweek performing the job duties described in paragraph 9, defendant fails to compensate plaintiff for work performed before the official shift start time and/or after his official shift end time, even when the work performed is recorded on defendant's timekeeping system. NYCHA also fails to compensate plaintiff for work performed during his unpaid meal periods. During the summer months, plaintiff Diaz is regularly scheduled to work from 8:00 AM to 4:00 PM, Monday through Friday. In all other months, he is regularly scheduled to work from 8:00 AM until 4:30 PM, Monday through Friday.

24. Approximately 4 to 5 times per week plaintiff Diaz arrives approximately 10 to 20 minutes or longer before the start of his shift and begins working. During this time, plaintiff Diaz changes into his uniform because NYCHA's work rules prohibit workers from wearing their uniforms off-site. He also prepares for roll call, charges his handheld device, receives his first assignments for the day, gathers his equipment and supplies and performs his regular duties described in paragraph 9. Approximately 2 to 4 times per month, plaintiff Diaz continues working for approximately 10 to 20 minutes after the end of his shift. During this time, he is performing the job duties described in paragraph 9, and also changing out of his uniform and returning his equipment and supplies. NYCHA work rules require workers to stay in uniform until 4:30 PM (or 4:00 PM during the summer months.) When plaintiff Diaz must work past the end of his shift, it is because he has received an assignment near the end of his shift that must be completed that day. Further, it is defendant's policy that Maintenance Workers cannot remain on

site alone. As a result, when another Maintenance Worker must work past the end of his shift to complete an assignment, plaintiff Diaz must work past the end of his shift to assist. Likewise, when plaintiff Diaz must work past the end of his shift to complete an assignment, another Maintenance Worker must stay past the end of his shift to help. The large volume of work also causes plaintiff Diaz to work through all or a portion of his meal period approximately 2 to 3 times per week, even though the entire period is unpaid. When plaintiff Diaz performs these unpaid work activities, it causes him to work in excess of 40 hours per week, for which he is not properly compensated.

25. Representative plaintiff Iran Malave, was a Maintenance Worker assigned to Gowanus Houses. While working at Gowanus Houses, plaintiff Malave worked over 40 hours per week (excluding his unpaid meal periods) at least 1 week out of every 4 weeks in the summer months and 3 to 4 weeks out of every 4 weeks in all other months. When plaintiff Malave worked over 40 hours in a workweek performing the job duties described in paragraph 9, defendant failed to compensate plaintiff for work performed before the official shift start time and/or after his official shift end time, even when the work performed was recorded on defendant's timekeeping system. NYCHA also failed to compensate plaintiff for work performed during his unpaid meal periods. During the summer months, plaintiff Malave was regularly scheduled to work from 8:00 AM to 4:00 PM, Monday through Friday. In all other months, he was regularly scheduled to work from 8:00 AM until 4:30 PM, Monday through Friday.

26. Approximately 4 to 5 times per week plaintiff Malave arrived approximately 10 to 20 minutes or longer before the start of his shift and began working. During this time, plaintiff Malave changed into his uniform because NYCHA's work rules prohibit workers from wearing their uniforms off-site. He also prepared for roll call, charged his handheld device, received his

first assignments for the day, gathered his equipment and supplies and performed his regular duties described in paragraph 9. Approximately 1 to 2 times per week, plaintiff Malave continued working for approximately 10 to 20 minutes after the end of his shift. During this time, he performed the job duties described in paragraph 9, and also changed out of his uniform and returned his equipment and supplies. NYCHA work rules require workers to stay in uniform until 4:30 PM (or 4:00 PM during the summer months.) When plaintiff Malave had to work past the end of his shift, it was because he received an assignment near the end of his shift that had to be completed that day. Further, it is defendant's policy that Maintenance Workers cannot remain on site alone. As a result, when another Maintenance Worker had to work past the end of his shift to complete an assignment, plaintiff Malave had to work past the end of his shift to assist. Likewise, when plaintiff Malave had to work past the end of his shift to complete an assignment, another Maintenance Worker had to stay past the end of his shift to help. When plaintiff Malave performed these unpaid work activities, it caused him to work in excess of 40 hours per week, for which he was not properly compensated.

27. Representative plaintiff Victor Colon is a Heating Plant Technician assigned to Soundview Houses and works over 40 hours per week (excluding his unpaid meal periods) at least 1 week out of every 4 weeks in the summer months and approximately 3 weeks out of every 4 weeks in all other months. When plaintiff Colon works over 40 hours in a workweek performing the job duties described in paragraph 10, defendant fails to compensate plaintiff for work performed before his official shift start time and/or after his official shift end time, even when the work performed is recorded by defendant's timekeeping system. NYCHA also fails to compensate plaintiff for work performed during his unpaid meal periods. In the summer, plaintiff Colon is regularly scheduled to work from 8:00 AM to 4:00 PM, Monday through Friday. In all

other months, he is regularly scheduled to work from 8:00 AM until 4:30 PM, Monday through Friday.

28. Approximately 4 to 5 times per week plaintiff Colon arrives approximately 10 to 20 minutes or longer before the start of his shift and begins working. During this time, plaintiff Colon prepares for roll call, receives his first assignments for the day and gathers his equipment and supplies. Approximately 4 to 5 times per week, plaintiff Colon continues working for approximately 15 to 20 minutes after the end of his shift. During this time, he is performing the job duties described in paragraph 10, and also changing out of his uniform and returning his equipment and supplies. When plaintiff Colon must work past the end of his shift, it is because he has received an assignment near the end of his shift that must be completed that day. Approximately 2 to 3 times per month, plaintiff Colon works during a portion of or his entire meal period to finish an assignment, even though the meal period is unpaid. When plaintiff Colon performs these unpaid work activities, it causes him to work in excess of 40 hours per week, for which he is not properly compensated.

29. The defendant knew or should have known plaintiffs perform the work described above because: plaintiffs must consistently perform work outside of their scheduled shifts to complete their assigned duties; plaintiffs' supervisors witness plaintiffs working outside their scheduled shifts; defendant is aware of the staffing requirements and volume of work that must be completed; and plaintiffs' hours are captured on defendant's timekeeping system, Kronos. The amount of uncompensated time each plaintiff Maintenance Worker or HPT has worked in excess of 40 hours a week can be determined through an analysis of defendant's own records. This is true for both the representative plaintiffs and all of the other current and former

employees of defendant employed during the past three years in the position of Maintenance Worker or HPT at NYCHA.

### *Late Payment of Overtime Worked*

30. When plaintiffs work beyond 40 hours in a workweek and are paid for overtime compensation, defendant delays the payment of overtime beyond the next pay period for which the plaintiffs are paid for their regular work hours. The delay in payment is done either because the defendant's managerial staff has simply failed to transmit purportedly necessary information to payroll, because defendant simply does not want to incur the cost for budgetary reasons in that particular financial quarter, or for other reasons that are unrelated to defendant's ability to determine the amount of overtime compensation that is owed to the plaintiffs.

31. Similar to the representative Maintenance Workers and HPT identified above, each of the other potential putative plaintiff Maintenance Workers and HPTs are paid for overtime more than two pay periods after the plaintiffs worked and earned the overtime compensation. The precise number of times this happened to each Maintenance Worker and HPT, and the precise amount of overtime compensation that was delayed in in each instance can be found in work and pay records for the plaintiffs and all others similarly situated, which are in the exclusive possession, custody and control of defendant.

32. In addition, plaintiffs are eligible to receive premium payments in addition to their hourly pay and plaintiffs believe that these are not included in the rate at which overtime is paid. Defendant's payroll records will reveal the extent to which this violation of the FLSA occurs.

## COUNT I

### FAILURE TO PAY OVERTIME FOR ALL HOURS PLAINTIFFS ARE SUFFERED OR PERMITTED TO WORK AND PAY AT ONE AND ONE-HALF TIMES PLAINTIFFS' REGULAR RATES OF PAY IN VIOLATION OF SECTION 7(a) OF THE FLSA

33. Plaintiffs hereby incorporate by reference paragraphs 1 through 32 in their entirety and restate them herein.

34. At all times material herein, during those workweeks in which the plaintiffs and all others similarly situated have worked hours in excess of 40 hours a week, they have performed work activities without compensation before the start of their shifts and after their shifts, and also during their meal periods. Accordingly, as a result of these pay practices, defendant has failed to provide plaintiffs and all others similarly situated with the rights and protections provided under section 7(a) of the FLSA, 29 U.S.C. § 207(a).

35. Section 207 of the FLSA requires the payment of overtime compensation to employees who work in excess of the hourly standards set forth therein. In particular, Section 207(a) requires the payment of overtime compensation at the rate of one and one-half times each employee's regular rate of pay for all hours employees are suffered or permitted to work in excess of forty hours per week. Defendant has failed to comply with the overtime pay requirements of the FLSA in the manner outlined herein by failing to compensate plaintiffs and all others similarly situated for work that they have been suffered or permitted to work before the official start time of their shifts, during their uncompensated meal periods and after the official end time of their shifts. In addition, the rate at which overtime has been paid has not included all premiums the plaintiffs are eligible to receive as required under Section 207(a) of the FLSA.

36. As a result of defendant's willful and purposeful violations of the FLSA, there have become due and owing to the plaintiffs and all others similarly situated an amount that has not

yet been precisely determined. The employment and work records for the plaintiffs are in the exclusive possession, custody and control of the defendant and its public agencies and the plaintiffs are unable to state at this time the exact amount owing to them. Defendant is under a duty imposed by the FLSA, 29 U.S.C. § 211(c), and various other statutory and regulatory provisions, to maintain and preserve payroll and other employment records with respect to the plaintiffs from which the amount of defendant's liability can be ascertained.

37. Pursuant to 29 U.S.C. § 216(b), plaintiffs are entitled to recover liquidated damages in an amount equal to their back pay damages for the defendant's failure to pay overtime compensation.

38. Plaintiffs are entitled to recover attorneys' fees and costs under 29 U.S.C. § 216(b).

## COUNT II

### FAILURE TO PAY FLSA OVERTIME IN A TIMELY MANNER BY PAYING FOR OVERTIME WEEKS OR EVEN MONTHS AFTER THE OVERTIME HAS BEEN WORKED

39. Plaintiffs hereby incorporate by reference paragraphs 1 to 38 in their entirety and restate them herein.

40. The FLSA mandates that overtime compensation be paid on the regular pay day for the period in which such workweek ends. Overtime payments under the Act may not be delayed except as reasonably necessary to compute the amount owned and in no event shall such payments be delayed beyond the next payday after such computation can be made. 29 C.F.R. § 778.106. Defendant has violated these basic principles by delaying plaintiffs' overtime payments for working in excess of 40 hours a week by weeks and in some cases months, with such delay not being reasonably necessary to compute calculating plaintiffs' overtime pay.

41. Defendant's failure to pay plaintiffs FLSA overtime pay in a timely manner and its withholding of such overtime payments violates section 7(a) of the FLSA. 29 U.S.C. § 207(a); 29 C.F.R. § 778.106.

42. As a result of the defendant's willful and purposeful violations of the FLSA, there have become due and owing to the plaintiffs an amount that has not yet been precisely determined. The employment and work records for the plaintiffs and all others similarly situated are in the exclusive possession, custody and control of defendant and its public agencies and the plaintiffs are unable to state at this time the exact amount owing to them, but from these payroll records, plaintiffs will be able to ascertain the precise extent of these violations of section 7(a) of the FLSA, 29 U.S.C. § 207(a). Defendant is under a duty imposed under the FLSA, 29 U.S.C. § 211(c), and various other statutory and regulatory provisions to maintain and preserve payroll and other employment records with respect to the plaintiffs and other employees similarly situated from which the amount of defendant's liability can be ascertained.

43. Pursuant to 29 U.S.C. § 216(b), plaintiffs and all others similarly situated are entitled to recover liquidated damages in an amount equal to their back pay damages for the defendant's failure to pay overtime compensation.

44. Plaintiffs and all others similarly situated are entitled to recover attorneys' fees and costs under 29 U.S.C. § 216(b).

**DEMAND FOR A JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, plaintiffs hereby demand that their claims be tried before a jury.

**PRAYER FOR RELIEF**

WHEREFORE, the plaintiffs pray that this Court:

(a) Enter judgment declaring that the defendant has willfully and wrongfully violated their statutory obligations, and deprived each of the plaintiffs, and all those similarly situated, of his and her rights;

(b) Order a complete and accurate accounting of all the compensation to which the plaintiffs, and all others similarly situated, are entitled;

(c) Award plaintiffs and all others similarly situated monetary liquidated damages equal to their unpaid compensation;

(d) Award plaintiffs and all others similarly situated interest on their unpaid compensation;

(e) Award plaintiffs and all others similarly situated their reasonable attorneys' fees to be paid by the defendant, and the costs and disbursements of this action; and

(f) Grant such other relief as may be just and proper.

Respectfully submitted,

*/s/ Gregory K. McGillivary*
Gregory K. McGillivary
WOODLEY & McGILLIVARY LLP
1101 Vermont Ave., N.W.
Suite 1000
Washington, DC 20005
Phone: (202) 833-8855

*/s/ Hope Pordy*
Hope Pordy
SPIVAK LIPTON LLP
1700 Broadway
Suite 2100
New York, N.Y 10019
Phone: (212) 765-2100
Fax:  (212) 765-8954
hpordy@spivaklipton.com